Good afternoon, Illinois appellate court 1st district court is now in session. The honorable justice Mary make for presiding case number. 1, 9 dash 2, 2, 5, 3 consolidated with. Case number 2, 1 dash 0, 9, 6, 4 in rate, the marriage of clues. Good afternoon console before we start the argument with each of you, beginning with the appellant. Please tell us your name and also with the appellate, let us know how much time of the 20 minutes that you will each be allotted. You would like to reserve for rebuttal and then we will begin. Console good afternoon. Your honors attorney John Voight on behalf of Frederick close the appellant. And 20 minutes allotted to each. Yes, that's correct. Would you like to reserve anything for rebuttal? 5 minutes would be plenty. That Thank you and you don't have to use your whole 20 minutes, but we will not cut you off before that. All right. Thank you. For the appellate, Lauren NASA, and they, and a SSA on behalf of appellee. Laura close. Okay. Mr. Voight. Whenever you're ready, you may begin. Thank you, your honor. If it please the court, Mr. Manassa. In preparing for this oral argument in looking over judge 40's judgment. It became apparent that judge 40 seemingly adopted Mr. Manassa's argument that in order for. A litigant, such as Frederick close to prove that assets were non marital. He must have every scrap of paper to trace from the time of the trial back in this case, 27 years to the start of the marriage. And I don't believe that's Illinois law, but quite frankly, it seems that most every domestic relations judge in. Cook county believes that that's the standard. So I'm hoping that this is a good opportunity for this court to clarify. That that isn't the law. And what are you suggesting the law is what is the rule that you're asking us for. I, it's my understanding that Illinois law is that it's not required that you have documentation, but if the testimony details and describes. How the assets went from 1 in this case from 1 investment account to another to another always kept in Mr closest name. That that is tracing under Illinois law. It's just doesn't require pieces of paper in every instance, especially given the fact that many financial institutions don't keep records back 27 years. And additionally, in this case, many of the institutions were no longer in business when Mr close sought to get those records. And the reason I say that your honor is because it seems judge 40 Came to that or believe that that was the rule and therefore he really didn't analyze and give us a reason about Mr closest very detailed testimony. Whereby he laid out that he purchased many parcels of property for cash long before the marriage, including what turned out to be the marital former marital residence. What other cooperating Testimony or evidence supports his his testimony or his claims. Well, there were exhibits offered in this case in two separate group exhibits that judge 40 accepted into evidence one group were Deposits can checks. And other bank and investment receipts just prior to marriage that my client testified was about 1.1 million and then there was a group of such documents shortly after the marriage that he testified was about 1.8 million now were they laid out perfectly where it was so clear to see and charted know he did the best he could, given the fact that this is 27 years back, but judge 40 never analyze these documents. He simply Seem to say, if you can't document it there. It's marital property, which if that's the standard. Then every citizen in Illinois that is unfortunately getting divorced with a lengthy marriage that believes they have non marital assets. Are out of luck because they can't document that. And I think you had judge for the explain about the real estate that Mr close purchase the manner in which he testified his savings pattern and history was established from the very first job he had And also that many years when he was employed outside the country where he was able to save his entire salary for a given year or a given period of time. So it was very logical that there were were substantial funds prior to the marriage additional Are the problems in this way is that it's in this is an argument that Mr Vanessa is making is making that the the amounts were far greater than his income and that there's that it would be an impossibility for him to have amassed that much wealth. Prior to the your, your honor. It's a very good question, but I think that diverts the attention to really the key question. And the issue is not how much money Frederick close had And how much it appreciated in value. But the question that was unanswered by judge 40 was where did the money come from that funded these three financial accounts. Mr close testified very clearly and I think his credibility was laid out very well that The expenses of the family, the general expenses he paid cash for his daughter's college education. He paid cash for his, his soon to be or his ex wife's Master's degree. He paid cash for every car. He laid that out before judge 40 and the amount of those expenses far exceeded the income during the marriage. So, of course, there was no ability to save money. There was no ability to co mingled money and invest marital assets into these three investment accounts. I think the record establishes, of course, it came from his non marital holdings, which were never put in joint ownership and Mr Manassas client. Her position at trial was, of course, they pulled their resources, but she never produced a scrap of paper to show one deposit into a joint account. Or one check from her income or Mr closest income that went into these investment accounts or those that came Isn't it the burden of the party that's claiming the assets are non marital isn't their burden to establish that the property is non marital Of course, Your Honor, and I haven't lost sight of that. But my point is, is that her lack of Testimony on this point is part of the record that goes to my belief that Mr close did in fact his detailed testimony establish That these assets were non marital and had judge for the analyzed his testimony, we may have a different we may have had a different result, but he seemed to just ignore his testimony and say, well, he doesn't have the every scrap of paper and therefore he's out of luck. And this, this argument you're making right now goes to the three financial correct not to the house because the house. Okay, and there you haven't got I'm sorry, Your Honor. Yeah, I haven't gotten to that. So my main three points is first, I believe, Judge 40 aired in in determining that the three investment accounts were non marital for the reasons I just stated. My second, my second point was, well, if he if truly they are marital, which I don't believe they are, but for the sake of argument, then A disproportionate share for Mr close would have been far more appropriate, given the circumstances and the contribution. It's obvious that the contribution came so much from this estate and the evidence was That this wasn't a financial partnership. It wasn't your usual marriage. They never pulled their resources. Mr close kept his money separate Even Mrs close testified that when it came to financial decisions. It was Fred's way or the highway. So even she established That these assets were never pooled the only joint account they had in 27 years was what they termed to be a social security account. Because at the end of Mr closest employment. He was he began to receive social security. And then, and only then, were they able to save money during their marriage and that went into a joint social security account. There was no evidence that there ever was any other joint account. So since this wasn't the partnership that Illinois statutes presuppose I believe it was error for judge 40 to give a 5050 distribution here, which really under the circumstances was a windfall to Laura close My third point in that in the first brief was that In this case that it was clear that at whatever transfer took place for a state planning purposes on the house that was bought 16 years before marriage was always kept separate was always in the name of Fred Frederick close Laura Wasn't even in the picture in 1971 I believe when he bought it. When it was only for a state planning purposes. Then this asset also should have been determined by judge 40 to be a non marital asset. And my last point I'm probably close to my 15 minutes before you before you go to your next point, though. Thank you. There. The argument is that the house was gifted to Laura when it was placed into the trust and that was based upon testimony from Mr Owens. And the trial court relied on that testimony. I guess you're asking us to find that that testimony was not credible, I guess. Can you just explain what you're arguing right now when you say that because you only dealt with one part of the issue. Yes, of course. Justice Walker. Mr Owens testified that they did this for a state planning purposes. Quite frankly, Mr close testified that his estate planning desire was to make sure his money went to his daughter. And that's, that's why he did it. There was no evidence that Mr close intended this to be a gift to the marital estate. The testimony was clear between all the witnesses that this was for a state planning purposes only. And in fact, Let me just stop you there for a second, because you said it was to his daughter and I understand the importance of that. But, and I realized hindsight is 2020 but he could have placed the property and trust in his own name and his daughter could have been the beneficiary. There was nothing that required him to make his wife, the beneficiary. I'm not sure your honor that Mr close was sophisticated enough to understand the difference, especially, especially as to the legalities of this Your honor may remember from the record that it was shortly after this that Mr close went back to Mr on and said, wait a minute. This is not what I intended to do. And he wanted to change it back and and Mr. Owen said, no, you got to bring, bring your wife back To do so. So I think the overwhelming evidence shows his intent was not to gift his intent was to take care of estate planning and It may have been his intent to set up a trust in his own name as as well. I just don't think he was conversant. So I believe that all of these assets should be should have been determined by Judge 40 to be His non marital property, but even if they're not An equal share was a windfall to Laura close under these circumstances, my, my final point that I want to make sure I We all realize that we're very clear on the record that she was actually asking for 60% of the estate. The child just did give her what she was asking for. And I know earlier you kind of you were talking about a different issue, but you said that That the trial judge simply adopted Mr. Manassas arguments and just entered his order based upon all of Mr. Manassas arguments where the trial court just didn't do that there. The trial court judge seemed to have meticulous he gone through this and disagreed with Mr. Manassas Well, what when I said that Judge 40 adopted Mr. Manassas position. It's on the position of That we have to document by document by paper or other documentation in order to trace under Illinois law to determine that assets are non marital I don't believe that's the law. I think the law. I just case I cited said that that it doesn't necessarily have to be documentation as long as the testimony is clear and credible. And as, as I said in my brief and I'll, I'll say it. Now there, there was never a moment at this trial that Mr. Close his credibility was Anything other than perfect that it was never tarnished at at the trial by cross examination or other How do you expect us to determine that we're not seeing a videotape of the trial or or any hearings. How can we determine credibility. Well, we have that we have the record. And we also have the history of this man and which I think Was laid out very nicely by the examination that Mel Sloan gave that's in the record that shows how Mr. Close came from Germany as a 16 year old to the United States truly the the epitome of a self made man. I think his, his history was laudable he put himself through Northwestern. Yeah, he became an international business businessman. He, he really has a remarkable story. I think he was a remarkable person on the record. Of course, you can't see his testimony. You don't, you only have the cold record. I think the record itself speaks for the character and integrity of this man. And that Mr. Boyd, you are out of time, but I want to give you a few minutes to address the issue of the post decree. What you're calling modification and Manassas, Mr. Manassas clarification. Anyway, can you address that. Yes, of course. Thank you. We will not take it away from your rebuttal. We do want you to address it. Thank you so much. That's very kind. Yes. So my point on the post post judgment argument was consistent with the case I cited, I believe it was the Wagner case. Had judge 40 said in his judgment, the 5050 distribution that I'm that I'm awarding is subject to these unresolved issues, accountings and otherwise. Then we may have a different story, but he didn't say that. So when Mr. Manassas came back well after 30 days These are issues that were pre judgment orders and motions and issues that apparently were not incorporated into the judgment. But what and Mr. Manassas styled this as a motion to clarify, but it really was a motion to modify and change judge 40s order, which was a 5050 distribution by a dollar amount of $111,000 if he doesn't do that within 30 days, I believe the court lost jurisdiction to modify that judgment. And that was my argument. Okay. And I got 2 questions for you. Yes. The 1st is you believe that the trial court's order is clear that. Laura was only entitled to an additional $111,000 and that it's clear that the trial court's order is not awarding $222,000. Is that correct? You believe the order as clear as it stands. I thought it was 111,000 math has never been my strong suit. Your honor, but but whether it's. $111,200,000, it was a modification of a judgment made on a motion that was filed after 30 days. It changed. The substance of judge 40s judgment. I don't believe judge 40 have the jurisdiction to do that under Illinois law. I believe the case I cited is right on point. Okay, and then my next question, I'm going to ask the same question at some point to Mr Vanessa. That does it matter because we've, we've, we've looked at quite a few cases in this area and to examine this so that we can make the right decision here. Does it matter that that a large majority of the case, I'd say probably 98% of them. Where a court has gone back to either clarify or enforcement judgment. It's always been based on a marital settlement agreement, and I shouldn't use the word always because there were, there may have been a couple of exceptions out there. Does that matter in this case that there was no marital settlement agreement here? That's a fair question. Your honor. I, I guess my answer is, I don't know. I think. The circumstances would be the same either way, but in this case, in particular, it was judge 40. Who entered a judgment that said that this is how I'm dividing the estate. And that division changed in favor of Laura by 111,000, if my math is correct. On a motion to clarify that I believe was a motion to modify. And again, it was filed long after 30 days. The court lost jurisdiction to change that judgment. In my opinion, had it been truly a part of that judgment, I think the language that the appellate court used in wagon, or I believe it was the appellate court. They said, you can't graft onto the judgment additional terms that weren't there. And that's exactly what judge 40 did. And that's exactly what Mr. asked judge 40 to do in my humble opinion. Can I, let me ask a question about that. Why would it not be a fair interpretation for us to say that judge 40s order was premised on his understanding that there would be a certain amount in these accounts that then turned out not to be there. And what if your client had taken everything out of these accounts? Would, you know, would judge 40 not have any power after 30 days to enforce or clarify that his order was based on his assumption to what was in those accounts? Well, the difference there, your honor, would be something that was unknown at the time of the judgment. These issues in this case were known prior to the judgment. They were there, but they weren't incorporated into judge 40s judgment. Mr. Manassa didn't ask within 30 days. Well, hey, wait a minute. What about these orders that were out there for Mr. Close to account for certain things? He needed to do that within 30 days in my belief under Illinois law, your honor. That's different than something that was completely unknown, which might give the right to come back within two years. Would it not be a fair assumption for the judge to make that his previous orders would be complied with? I think that he should have addressed that in his judgment and said that. Or it should have been brought to his attention again within 30 days by Mr. Manassa, not after 30 days. Okay, I'm sorry, Judge Johnson, you had a question. Judge 40 in his order used the term equal division. Is that correct? Yes. Okay, so if the parties are not clear on what the word equal means or refers to, isn't the judge entitled to clarify that? Isn't that what this is about, that term equal? Again, Justice Johnson, it would be a different matter, I believe, if Judge 40 said in his judgment, you know, we've got these prior orders. And if they haven't been complied with that, that money should come out of Mr. Close's 50%. He was silent on that. And I think also in his judgment, I don't recall this specifically, the assets were listed, the values were determined, they certainly were determined at trial. So we all know what it was. We all know that what was ordered at the time of the judgment was changed by, again, I believe, $111,000. That needed to be done within 30 days under Illinois law, I believe. Thank you, counsel. You could, you will still have five minutes for rebuttal, unless there's further questions now from anyone. All right, Mr. Manasseh, whenever you're ready. Thank you. May it please the court. So there's three issues in Mr. Boyda's first appeal. The first issue being whether the court erred in finding the three investment accounts in the marital residence to be marital. The second is that the court error in equally dividing the marital estate. And then the third kind of captures part of the first. It says that the court error in finding the marital home to be marital. So I'm going to take it in order, except I'm going to deal with the marital home part only under three, because it really is under both. And I don't want to duplicate my argument. So, 750 Illinois compiled statutes 5 slash 503B1, as your honors know, states, all property acquired during the marriage is presumed to be marital property, including non-marital property transferred to some form of co-ownership. In this case, a land trust with Laura's beneficiary. This presumption can be overcome by clear and convincing evidence. I want to move to the investment accounts as it relates to his first issue. The investment accounts were opened 14, 18, and 19 years into the marriage. Fred earned, according to his social security statement of income, which I questioned him about and got into evidence, approximately $330,000 in the 33 years that he worked prior to the marriage, an average of $10,000 a year. That would include the $52,000 he spent on that home, by the way. During the marriage, the parties earned $1,881,868. That fact doesn't only not overcome the marital presumption, it strongly corroborates the marital presumption here. His only evidence really was his testimony and some exhibits that Mr. Voed has spoke about moments ago in his argument, but I'd like to put a little bit more clarity on. His exhibits, as became clear in the cross-examination or adverse examination, were at best misleading and at worst fraudulent. Fred included in his analysis and in his exhibit several CDs that had matured, and then he would reinvest them, and they would mature again, and he'd reinvest them, but he counted them up like they were separate assets. Additionally, he included, as the testimony showed, assets of other family members, his aunt, his dad, his brother, they weren't even his assets. And worse, he added in his addition of what he thinks he had prior to the marriage, notes that weren't assets at all, they were loans, they were debts. The trial court found him not to be credible correctly. His second issue is whether the court erred in dividing the marital estate 50-50. As your honors have correctly already indicated in some questions to Mr. Voed, we asked for 60-40. We asked for 60-40 because my client is around 20 years younger than Mr. Close, and it made sense that she would have more need of the marital assets than he would because of lifespan. They both significantly contributed to the marital estate. He didn't do that, the judge. He divided the marital estate 50-50. I don't see how in the world that's an abuse of discretion. I think it's well within it. Moving on to part of the first issue and what is the third issue in that first appeal, which is the marital home. It is uncontroverted that Mr. Close bought that home for $52,000 before the marriage. It's just as uncontroverted that on March 5, 2000, he signed a deed over with the help of an attorney who testified that he went through it almost word for word, and he's sure Mr. Close understood it. But he deeded it over to a land trust, in this case, with Laura as the beneficiary of that land trust. That was done, according to Mr. Owens, for two reasons. One reason was indeed for estate tax purposes, but the other reason was not. The other reason was, as Mr. Owens testified, because this is what the parties wanted. They wanted to more equalize what they both held because up till then, everything was held by Fred and they wanted Laura to hold closer to equal assets. There was a lot of ways to do this. Other than that, if all they were trying to do was to do it for estate planning purposes, but the attorney that handled it for them said it wasn't just done for that purpose. It was done for a second purpose, and it's my understanding of Illinois law that it would be an exception to it being marital on that transfer if it was only done for tax or estate planning purposes. But if there's any other reason, like the one offered by Mr. Owens, who should know since he's the one who drafted it after speaking to the parties, then it does have a donated intent. It does show an intention to make it Laura's marital property. Additionally, I want to correct a bit of what Mr. Voida stated because I don't think it's accurate as to the record. Mr. Close didn't almost immediately go back to Mr. Owens and say, I want to undo it. It was years later that he went back to Mr. Owens after there was some marital breakdown, and he's like, oh my gosh, I know what the ramifications are going to be here. I want to undo it. And Mr. Owens said, not doing that without your wife presence as well. I did this on behalf of both of you and any modifications are going to be on behalf of both of you, not in secret. Moving on to the second appeal. I believe that the second appeal is confined only to the narrow issue that he alleged, which is he claims the court lost jurisdiction, did not have jurisdiction. Although I agree with your honors that the court in ordering an equal division has a right, if not even a duty to make clear what that means, what's included in the equal division so that it's actually equal. And by the way, again, just for sake of clarity, there were nine separate orders ordering Mr. Close to account for what he did with these funds that he unilaterally kept taking from the investment accounts that he had sole access to while the case was pending before trial, during trial, and after trial. Some of those orders were before trial, some were during, some were after. It never stopped. And yet he still never complied. So we filed the motion under 1401. The court would never have lost jurisdiction for up to two years. And although it was never argued by Mr. Voight to begin with, due diligence wasn't a problem on our part. It was as a result of the fact that its client ignored nine separate court orders that the enough, I'm going to order the money that he took to be equalized here. That's what I meant all along anyway here. And so that's what he did. As far as whether it's 220 or 222 or 111, this is my understanding for what it's worth. I think it's either 111 from Fred or 220 from the marital estate. Turns out the same here. I think that in essence equalizes the marital estate. And that's what the court had ordered. And I think correctly so. And yes, I think he had a right to do so. I'm sure he didn't lose jurisdiction. And I think that he could always clarify it. And again, it was filed under 1401. So I know he wouldn't have lost jurisdiction for up to two years. And it was well under that. And the only delay in filing this, there kept being new orders ordering Mr. Close to account for what he did. We were hoping he'd do it. But he didn't. I have a question for you, Ms. Menessa. There was a, there's some argument in Mr. Boyer's brief regarding Laura having taken all the money from the Social Security account. But as I went through the record, I don't recall that being an issue before the trial court. Is that correct? No, it was not an issue before the trial court. There was a dissipation claim that was denied. But I don't believe that was the, that that was the dissipation claim. I think she took some money from that joint account when she left. And she went off to New Mexico. But the argument was that she took all the money. I believe that's inaccurate. I don't believe that was a testimony. Okay. And then everyone agrees that Frederick had substantial investment accounts prior to the marriage. That's, that's kind of, that's the baseline. We'll start there. So, if he had these substantial accounts, and those accounts were, Laura's name was never placed on those accounts, why wouldn't they be non-marital assets? Well, because what I think took place is that money, I don't know how substantial it was for all the reasons I've said. Some of it was what he added it up more than one time, and it's the same assets. It was those CDs that matured. Other things weren't even assets of his. They were of his family members, but whatever he had. But stop for a second. So, if the CDs that matured, and they're simply reinvested as another CD, that wouldn't change the status from marital to non-marital. No, absolutely not. That's not what I'm trying to say. I think that they tried to convince Judge Forte that these were all separate assets. And even though they're the same money that was put into a CD, that it would mature, put into a new CD, they would use the base of each one of those and add it up and say he had all these different assets, when it's really just the growth that should have been added to it, because it didn't start over. It's the same initial investment, and then it's the increase of that investment. But you're just saying the math doesn't add up. That's exactly what I'm saying. The math didn't come close to adding up. So, I don't think it was nearly as substantial as they say, but I think the bottom line is, it was 14 years before they, while married, before they started the first of these three investment accounts, they didn't have these other assets anymore. They spent them over the first 14 years, and he may have spent some, because you've got to remember that these quote unquote non-marital assets were over a lengthy period of time. During that period of time, he may not have, he might have had very little of them at the time they even got married, but then they were spent. None of those assets were part of the marital estate at the time that the court divided it, nor were they for many, many years, if ever. So, just so I'm clear, the three accounts that are an issue here were all opened during the marriage, is that correct? Your Honor, not only is that correct, but 14 years, 18 years, and 19 years into the marriage. Okay. So, if the claim is that they're non-marital property because the assets that funded those were actually transferred in, that's, I just understand his claim. It's a big jump. It's a big jump after 14, 18, and 19 years. Okay. All right. So, yeah, yes is the answer. Well, not necessarily though, Mr. Manessis, that's not necessarily a big jump. If these are CDs that are held exclusively in his name, held prior to the marriage, and they're simply being rolled over into some other investment, and Laura's name is not placed on that account, that, it still doesn't transmute to a miracle. Sorry, I didn't mean to interrupt. No, you're fine. Please, I want to hear from you. I want you to talk. I, it is my memory and my belief that, again, these CDs, many of which were many years prior to the marriage, there's no indication, evidence-wise, that was offered. None. Other than maybe his testimony without any corroboration in his testimony was not found credible. Testimony is evidence, but go ahead. Well, I said, other than his testimony, and his testimony was not found credible often, that those funds even existed anymore. During the beginning of the marriage, let alone 14, 18, or 19 years into it, he had to live, and he lived off of those investments as he's making $10,000 a year for 33 years. It wasn't like it all sat. He bought a house for $52,000 out of it. He bought a car, he testified. I forgot how much, to be honest, but he bought a car from it. And then he had his daily expenses, his living expenses. It's 10,000 years. All he had is an average $330,000 for 33 years. So this all happened during a 33-year period of time. Much of it, a ways back. As far as the investments, as I said, it didn't add up. It didn't add up to anything close to what he said it was. I think the money was spent. And I think there's no evidence that it was spent even during the marriage, let alone put into these investment accounts. I'd agree with your honor that if he had that money aside in CDs or however, only in his name, he kept it that way. He had it before the marriage. And all of a sudden, they decide to open investment accounts 14, 18 years into the marriage. And he uses those funds. It would be his non-marital funds. But that's not what happened. That's not what the evidence says. There's no evidence to support that other than potentially his testimony. But I don't even think he was clear on that. Going back to the post-judgment, unless somebody has a question on that. The post-judgment, did you need 1401? I mean, what's your view of whether you needed 1401 or did you just throw that in just in case? I was being careful. No, I think I could have done a motion to clarify because I think, again, the court had the ability and I think maybe even the duty to be clear of what he meant by an equal division. And he did that. But because this case has been so litigious, I put it under 1401 just to be sure is the answer to your question. I think it was also, if I remember right, a two-part. It was a motion to clarify under 1401 and a petition for contempt, petition for direct civil contempt. And because on a related note, I was going to raise that issue as well. If the court was aware that Mr. Close had not complied with the previous orders, and therefore there was this nebulous figure or money that was unaccounted for, why was there no language addressing that issue in the judgment of this group? Well, I didn't draft the judgment for dissolution. The judge did. But I can tell you why he wasn't held in contempt and incarcerated until he put the money back. I mean, there's a reality here. And the reality is that he's an elderly man and none of us wanted to see him go to jail. We just wanted to comply with the order. And the court kept trying and trying and trying to give him more grace and more grace and more compliance. And we were cajoling him to do it. But he wasn't doing it. Counselor, you too could have immediately after the judgment was issued. We understand how it works. We understand that if you don't have a settlement agreement, the trial judge just issues a judgment, you're stuck with what you get. You don't get to weigh in on what the judge is going to do. And that's what happened here. But after the judgment was entered, and I'm going back to Justice Johnson's question, you knew that there was still an outstanding issue. And that issue could have been brought before the trial court. And this is actually Mr. Boyer's argument. Could have been brought before the trial court within the 30 days, such that the trial court would have an opportunity to address the issue. Instead, you waited to bring it under 1401. And coming back to Justice McBeth's question, was it even a 1401 issue? The reason I did it, I tried to be clear, but I'll try to be clearer. There were orders for Mr. Close to account for the money that he took, because it wasn't necessarily going to be the case that every dollar of that was going to be counted against him. That's the purpose of the accounting orders. Before, during, and after the trial. And so we were waiting, the judge, I think, both counsels, for an answer to that, so that we knew what next steps would be. And when he also didn't then comply to the post-judgment order, not only the pre-judgment orders and the during trial orders, but the post one, I filed a motion. Because I had to at that point, but I was hoping to get an answer, and that we were going to resolve it without the need of that. Right, but your motion could have been on file long ago. Because your motion was about 43 days after the 30-day period had expired. That's true. That's true. I think if the issue that he raised on appeal is the court lost jurisdiction, I think the law is overwhelmingly clear that the court did not lose jurisdiction. But could I still have filed it earlier? Yes. I didn't for the reasons that I just shared. But I don't think I was obligated to. And while we're on this issue, I'm going to ask you the question that I asked Mr. Foyer earlier. Does it matter here that there was no settlement agreement? Because all of the other cases that you rely on, there was a settlement agreement in place. And that's when the trial court went in and just clarified or enforced the settlement agreement in most of the cases. So here there was no settlement agreement to enforce. Because basically, if the trial court is enforcing the settlement agreement, you're enforcing the agreement of the parties. Exactly. We have the judgment. And basically, now the time for enforcing the judgment is within 30 days. Of course, we know that in a divorce court, the judge always has a right to enforce the judge's order. But that was not a part of the order. Unless we come back to what you're arguing, that it was a part of the order to the extent that the estate was divided equally. I believe it was part of the order that the estate was divided equally. I know my client even testified during the trial that she was seeking reimbursement for the money that Fred Close had unilaterally taken from those investment accounts while the case was pending. And I think that the argument's even stronger on a judgment that's entered after trial by a court on a motion to clarify than it would have been if the parties had come to an agreement. Because if it's an agreement, in a marital settlement agreement, if they're drafting, they ought to know the intention behind it. But if it's the courts, it's the court that knows his intention behind it. And we were just trying to find out what it was. How to interpret that in light of what took place. And I think it was appropriate. I think the motion was appropriate. I think his ruling was appropriate. And I think very far from the abuse of discretion. And he didn't lose jurisdiction. Any other questions? Because if not, you are out of time. Any questions from anyone on the panel? All right. Rebuttal. Thank you very much, Counsel. Rebuttal. Thank you, Your Honor. What Mr. Manasseh didn't tell Your Honors is that Judge Forte didn't issue his judgment until about nine months or longer after the trial was concluded. Mr. Manasseh had plenty of time to file this motion. Here's the point. The reason they didn't file it is they know doggone well what Mr. Close was doing with the money. Mrs. Close left him holding the bag with all the marital expenses. He paid the real estate taxes. He got a new furnace. He had to pay for the... This guy was the last person that's going to be a spendthrift and spend away what he believed to be his non-marital estate. And again, his overriding purpose was to take care of his daughter in that estate planning. Mr. Manasseh didn't tell what really happened at that trial, and that is he said that they went because of some sort of marital problems to do this estate planning. Mr. Close never knew there were any marital problems until Laura filed for divorce, left without telling him, and claimed she was so scared of him because he had a gun. And then she came back a couple of days later, apparently not so scared. The reason they went to estate planning was Mr. Health had... Mr. Close had some health scares. As far as the math not adding up, the money that was from other family members, he testified he inherited that money. So do we have a perfect picture of how much money he had? He testified under oath that he had 1.1 million when he started. Did all the documents corroborate that? Probably not. But there were plenty, and Judge Forty never gave any shrift to any of that. I beg to differ with Mr. Manasseh. I reread the judgment just yesterday. I don't remember seeing anything from Judge Forty that he found Mr. Close's testimony not to be credible. He didn't even analyze that testimony sufficiently, in my opinion, because I believe he had already made up his mind, we don't have the documentation, easy way out, 50-50. He claimed that there was significant contribution to the marital estate from both of them. I wonder what that is. Yes, of course, she was a homemaker. Yes, of course, she took care of their daughter. But financially, she kept what little income she made separate. There never was a commingling. If this money didn't come from Mr. Close's non-marital estate, then why didn't he put it in joint ownership when he opened these three investment accounts? He didn't. He kept them in his own name because he rolled over everything. He couldn't document this, but he testified very clearly how he invested in CDs, how he invested in money markets, why he changed his investment strategy into annuities. And again, Mr. Manasseh didn't bother to address what I think was very critical testimony, and that is that they couldn't have saved any money from their incomes because the expenses of the marital estate far exceeded their incomes during the marriage. So that math didn't add up. So if they couldn't save during the marriage, the only explanation for where the money came in the three investment accounts is his non-marital estate and the investment growth for those many years. There were many tax returns showing his interest income, which was fairly sizable. I wish we would have had an expert to analyze that for the trial court, but Mr. Close didn't feel that that was necessary. But nonetheless, Judge Forte had plenty of testimony to find that these were traceable, maybe not through documentation always, but through his testimony, which again, with all due respect to Mr. Manasseh, I don't think Judge Forte found to be not credible. He just didn't really spend a great deal of time analyzing it in his judgment. Any questions from the panel? No. Thank you both very much for your time. We will take this under advisement. Justice Walker, do you have a question? No. Okay. Thank you. We'll take this under advice and you will hear from us in due course.